Travis JACKSON, Plaintiff,

v.

The CONGRESS OF the UNITED STATES, and the Veterans Administration, Defendants.

No. 82 Civ. 2298(LBS).

United States District Court, S.D. New York.

March 11, 1983.

Travis Jackson, pro se.

John S. Martin, Jr., U.S. Atty., S.D.N.Y., New York City, for defendants; Jonathan A. Lindsey, Asst. U.S. Atty., New York City, of counsel.

## OPINION

SAND, District Judge.

This *pro se* action arises out of the enactment of the Veterans Rehabilitation and Education Amendment of 1980, Pub.L. No. 96–466, § 602(a), (c), 94 Stat. 2171, 2208–09 (1980) (hereinafter "1980 Amendment"). Petitioner, Travis Jackson, is a veteran of the United States Armed Forces and is currently incarcerated in Greenhaven Correctional Facility. He claims to be enrolled as a student at Marist College of Poughkeepsie, New York. Jackson has filed a petition for writ of mandamus to compel the Veterans Administration (hereinafter "VA") to resume payment of benefits alleged to be due him under the Veterans Educational Assistance Program. The defendants filed this motion to dismiss pursuant to Fed.R.Civ.Pr. 12(b)(6).

The 1980 Amendment took effect on October 1, 1980, amending, *inter alia,* two sections of Title 38 of the United States Code: § 1682 was amended to include subsection (g) which provides:

"(1) Subject to the provisions of paragraph (2) of this subsection, the amount of the educational allowance paid to an eligible veteran who is pursuing a program of education under this chapter while incarcerated in a Federal, State, or local penal institution for conviction of a felony may not exceed such amount as the Administrator determines, in accordance with regulations which the Administrator shall prescribe, is necessary to cover the cost of established charges for tuition and fees required of similarly circumstanced nonveterans enrolled in the same program and to cover the cost of necessary supplies, books, and equipment, or the applicable monthly educational assistance allowance prescribed for a veteran with no dependents in subsection (a)(1) or (c)(2) of this section or section 1787(b)(1) of this title, whichever is the lesser.

(2) Paragraph (1) of this subsection shall apply in the case of any veteran who is pursuing a program of education under this chapter while residing in a halfway house or participating in a work-release program in connection with such veteran's conviction of a felony if the Administrator determines that all the veteran's living expenses are being defrayed by a Federal, State, or local government."

38 U.S.C.A. § 1682(g) (Supp.1982). Subdivision (6) was also added to § 1780(a) to provide that no payment of educational assistance to eligible veterans pursuing a program of education shall be made

"to any eligible veteran or person incarcerated in a Federal, State, or local prison or jail for any course (A) to the extent the tuition and fees of the veteran or person are paid under any Federal program (other than a program administered by the Administrator) or under any State or local program, or (B) for which there are no tuition and fees."

38 U.S.C.A. § 1780(a)(6) (Supp.1982).

Thus, under the 1980 Amendment, incarcerated veterans' educational benefits are limited to the cost of tuition, fees and supplies or the allowance of an unincarcerated veteran with no dependents, whichever is less. Furthermore, to the extent that an incarcerated veteran's education costs are paid by other governmental agencies, the VA benefits are suspended.

As a result of the 1980 Amendment, Jackson's educational benefits were suspended by the VA, after an administrative determination that his educational expenses were already being paid by other governmental programs. Petitioner attacks this result on three grounds: he contends that the statute violates petitioner's equal protection rights, deprives petitioner of property without due process of law, and constitutes a breach of the government's contractual obligation to provide petitioner with educational benefits.

The defendants contend, however, that this Court lacks subject matter jurisdiction over petitioner's claims to the extent that Jackson is requesting a review of the decision of the VA. With respect to petitioner's constitutionally based claims, the defendants contend that Jackson has failed to state a claim upon which relief may be granted.

### JURISDICTION

Congress has specifically removed the power of federal courts to review decisions of the VA:

> "On and after October 17, 1940, except as provided in sections 775, 784, and as to matters arising under chapter 37 of this title, the decisions of the Administrator on any question of law or fact under any law administered by the Veterans Administration providing benefits for veterans and their dependents or survivors shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision by an action in the nature of mandamus or otherwise."

38 U.S.C.A. § 211(a) (1979). The constitutionality of § 211(a) has been upheld consistently by the federal courts, with respect not only to denial of original claims for benefits, *Johnson v. Robison,* 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974), but also to termination of benefits previously awarded. *De Rodulfa v. United States,* 461 F.2d 1240, 1247–58 (D.C.Cir.), *cert. denied,* 409 U.S. 949, 93 S.Ct. 270, 34 L.Ed.2d 220 (1972).

■ However, § 211(a) does not preclude a federal court from determining the constitutionality of a statute. *Johnson v. Robison, supra,* 415 U.S. at 373, 94 S.Ct. at 1168–1169. This Court therefore has jurisdiction to consider only those of petitioner's claims which present challenges to the constitutionality of the statute.

Defendants also contend, solely by way of footnote in their memorandum, that petitioner is not entitled to judicial relief because he has failed to exhaust his administrative remedies. Jackson claims that he did exhaust these remedies. Because we consider the petition on a motion to dismiss, however, we may assume petitioner's contention to be true. Moreover, even if we were to assume that Jackson had not exhausted his administrative remedies, our jurisdiction would not be precluded. The purposes of the exhaustion doctrine include "the avoidance of premature interruption of the administrative process," the protection of administrative independence and practical considerations of efficiency. *McKart v. United States,* 395 U.S. 185, 193–95, 89 S.Ct. 1657, 1662–1663, 23 L.Ed.2d 194 (1969). However, where the petitioner's constitutional rights are threatened and "there is nothing to be gained from the exhaustion of administrative remedies," *Wolff v. Selective Service Local Board No. 16,* 372 F.2d 817, 825 (2d Cir.1967), an exception to the doctrine has been recognized. *See Fuentes v. Roher,* 519 F.2d 379, 387 (2d Cir.1975); *Gregg B. v. Board of Education of Lawrence School District,* 535 F.Supp. 1333, 1337 (E.D.N.Y.1982); *Jones v. Niagara Frontier Transp. Authority,* 524 F.Supp. 233, 237 (W.D.N.Y.1981).

■ If Jackson were contesting the VA's finding of fact or its interpretation of the 1980 Amendment, the VA's final decision would be not only required, but preclusive. However, Jackson is contesting the constitutionality of an act of Congress, an issue not within the authority of the VA to decide. 38 U.S.C.A. §§ 201, 210, and 4004 (1976 and Supp.1982) (role of the VA, its administrator and the Board of Veterans' Appeals is to administer and execute laws

relating to benefits for veterans and their families). Therefore, exhaustion of petitioner's remedies could have no bearing upon the outcome of this case.

## EQUAL PROTECTION CLAIM

Although the Constitution contains no explicit requirements of equal protection applicable to the federal government, the Supreme Court has inferred such a requirement from the due process clause of the Fifth Amendment. *Johnson v. Robison, supra,* 415 U.S. at 365, n. 4, 94 S.Ct. at 1164; *Richardson v. Belcher,* 404 U.S. 78, 81, 92 S.Ct. 254, 257, 30 L.Ed.2d 231 (1971); *Shapiro v. Thompson,* 394 U.S. 618, 641–42, 89 S.Ct. 1322, 1335–1336, 22 L.Ed.2d 600 (1969); *Bolling v. Sharpe,* 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

If the legislation "operates to the disadvantage of some suspect class or impinges upon some fundamental right explicitly or implicitly protected by the Constitution," then the court must examine the 1980 Amendment with strict scrutiny. *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 17, 93 S.Ct. 1278, 1288, 36 L.Ed.2d 16 (1973). However, there is no authority to support the designation of prisoners as a suspect class in need of special protection from discriminatory legislation. The class is based not upon an "immutable characteristic determined solely by the accident of birth," *Frontiero v. Richardson,* 411 U.S. 677, 686, 93 S.Ct. 1764, 1770, 36 L.Ed.2d 583 (1973), but rather upon conduct plainly requiring specialized legislation. Similarly, the entitlement to veterans educational benefits has never been considered a fundamental interest requiring special constitutional protection. *Cleland v. National College of Business,* 435 U.S. 213, 217, 98 S.Ct. 1024, 1027, 55 L.Ed.2d 225 (1978) ("legislative precision has never been constitutionally required in [veterans' educational benefits cases]."); *Johnson v. Robison, supra,* 415 U.S. at 375, 94 S.Ct. at 1169 (refusing to apply heightened scrutiny to denial of education benefits to conscientious objectors); *Fielder v. Cleland,* 433 F.Supp. 115, 118 (E.D.Mich.1977) (holding that "there is no

basis in federal law to support the classification of [educational benefits] as 'fundamental' "). *See San Antonio Independent School District v. Rodriguez, supra* (a right to education is not in and of itself protected by the Constitution).

Since no suspect class or fundamental interest is threatened by the legislation, the Court's role is limited to a determination whether Congress had some legitimate purpose for enacting the legislation, and whether the classification imposed by the legislation is "reasonable, not arbitrary and ... rest[s] upon some ground of difference having a fair and substantial relation to the object of the legislation," *Royster Guano Co. v. Virginia,* 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989 (1920). *See also, Johnson v. Robison, supra,* 415 U.S. at 374–75, 94 S.Ct. at 1169.

The 1980 Amendment was designed to deal with two problems: (1) the duplication of governmental payments that resulted when an incarcerated veteran's educational costs were covered by two or more government agencies concurrently; and (2) the incentive for misuse of the funds, particularly for narcotics traffic in prisons, that resulted from this double payment. H.Rep. No. 96–498, 96th Cong., 1st Sess. (1979), *reprinted in* 1980 U.S.Code Cong. & Ad. News 4555, 4604. *See also* discussion of the Senate version of the amendment, 126 Cong.Rec. S185, S221–26 (daily ed. Jan. 23, 1980) (statements of Sens. Dole and Cranston).

These ends are clearly within Congress' broad power, under Art. 1, § 8 of the Constitution, to determine how funds Congress dispenses will be used. *Cleland v. National College of Business,* 435 U.S. 213, 221, 98 S.Ct. 1024, 1028, 55 L.Ed.2d 225 (1978) (per curiam) (Congress has broad power to make decisions concerning how veterans benefits should be administered); *Mathews v. DeCastro,* 429 U.S.181,185, 97 S.Ct. 431, 434, 50 L.Ed.2d 389 (1976).

The legislation enacted by Congress to realize these ends need not be the most effective or the fairest method possi-

ble. It merely must bear some rational relation to a purpose for which it is enacted. *Dandridge v. Williams,* 397 U.S. 471, 487, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491 (1970). The 1980 Amendment is designed to eliminate duplication of payments of educational assistance by specifically limiting the reduction of an incarcerated veteran's benefits to situations in which he or she is already receiving educational assistance from other sources. This may be considered an incomplete and underinclusive solution to the general problem of unnecessary duplication of educational assistance by the government, since there is no analogous prohibition against most other veterans receiving concurrent state or federal funding. However, as pointed out in the House Report, *supra,* at 4605, Congress has placed a similar restriction on educational assistance for active duty servicemen. 38 U.S.C.A. § 1781 (1979) (denying veterans educational assistance benefits to an active duty serviceman whose education is already paid for by the Armed Forces or other governmental agency). Furthermore, the congressional finding of extensive misuse of educational benefits by incarcerated veterans, House Report, *supra* at 4604, suggests that the duplication of benefits to prisoners leads to specialized problems, which the 1980 Amendment is reasonably calculated to reduce. It cannot be said that the classification imposed by the 1980 Amendment is arbitrary or unreasonable. Therefore, Jackson's equal protection claim must fail.

### BREACH OF CONTRACT CLAIM

Petitioner claims that the defendants' refusal to continue payments is a breach of an implied condition of his military service contract. To the extent that this claim is based on a contract action, it is not a constitutional claim and, therefore, not within the jurisdiction of the federal courts. 38 U.S.C.A. § 211(a) (1979), discussed *ante* at p. 3.

### DUE PROCESS CLAIM

Jackson also claims, however, that the government's breach of contract constitutes a deprivation of property without due process of law and is therefore prohibited under the Fifth Amendment. This due process claim is untenable for reasons similar to those discussed above in connection with equal protection. *Fielder v. Cleland,* 433 F.Supp. 115, 120–121 (E.D.Mich.1977).

Even assuming, without deciding, that petitioner has a contract right or other property interest in the denied benefits, substantive due process only requires that the legislation bear some rational relation to a legitimate governmental purpose, unless a fundamental right is at stake. *Cleland v. National College of Business, supra,* 435 U.S. at 220–22, 98 S.Ct. at 1028–1029; *Mathews v. DeCastro,* 429 U.S. 181, 185, 97 S.Ct. 431, 434, 50 L.Ed.2d 389 (1976); *United States v. Carolene Products Co.,* 304 U.S. 144, 154, 58 S.Ct. 778, 784, 82 L.Ed. 1234 (1938).

█ It is apparent from the Court's analysis of petitioner's equal protection claim that the 1980 Amendment is rationally related to congressional objectives. Therefore, Jackson's due process claim must also fail.

### CONCLUSION

For the reasons stated above, defendants' motion to dismiss the petition is hereby granted.

Petition Dismissed

SO ORDERED.