Daniel SUGRUE, Plaintiff,

v.

Edward J. DERWINSKI, Secretary of Veterans Affairs, Defendant.

Daniel SUGRUE, Plaintiff,

v.

Edward J. DERWINSKI, Secretary of Veterans Affairs, and S. Wohl, Robert J. Schmidt, John Does 1–X and Mary Does 1–X, the true names of said Doe defendants being unknown to the plaintiff at this time, Defendants.

Nos. CV–90–1972; CV–91–2041.

United States District Court, E.D. New York.

Dec. 18, 1992.

Kevin P. Quill, Long Island City, NY, for plaintiff.

Jennifer C. Boal, Asst. U.S. Atty., Brooklyn, NY, for defendants.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

In two pending actions, plaintiff Daniel Sugrue alleges that the Department of Veterans Affairs ("VA") and its employees violated his constitutional and statutory rights in determining his veterans' benefits award. Plaintiff moves to serve a second amended complaint in the first action, CV–90–1972 ("Sugrue I"), which is identical to a complaint already filed in the second action, CV–91–2041 ("Sugrue II"). The government moves to dismiss both Sugrue I and Sugrue II for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted, or, in the alternative, for summary judgment. For the following reasons, the government's motion to dismiss is granted in both actions and the plaintiff's motion to amend his complaint in Sugrue I is denied.

## FACTS

On June 11, 1990, plaintiff Daniel Sugrue, an attorney admitted to the New York bar in 1961, commenced an action against defendant Thomas Derwinski, Secretary of the VA, alleging that the VA in setting his disability rating at 50 percent and refusing to revise that disability rating, violated the Privacy Act ("PA"), 5 U.S.C. § 552a; the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552; and his rights to Due Process. In an amended complaint, filed on October 9, 1990, plaintiff repeated those claims, but added a claim that his property was taken without just compensation in violation of the Fifth Amendment and requested damages.

Plaintiff was a prisoner of war during the Korean War from April 1951 until his release in August 1953. When he was released, plaintiff complained of hand tremors. At a medical examination conducted by the VA on January 19, 1954, plaintiff was diagnosed as suffering from (1) Parkinsonism and (2) Anxiety Reaction. On March 17, 1954, the Adjudication Division gave plaintiff a disability rating of 30 percent based on his medical condition of "Anxiety Reaction with Parkinson Features, Chronic Mod. Severe."

In 1981, former prisoners of war were notified of recent legislation allowing them to seek medical assistance at VA facilities. Amended Complaint at ¶ 37. On February 14, 1983, plaintiff was examined by a neurologist in a VA facility. The examining

physician, Dr. Bennett Derby, who was not a VA employee, determined that plaintiff suffered from "a marked neurological impairment" which "approached total disability for work as an attorney." Amended Complaint at ¶¶ 40, 41. In addition, the test results of the neurological examination were recorded. Thereupon, plaintiff filed a claim for veterans' benefits, contending that this neurological impairment originated when he was a prisoner of war. On April 6, 1983, in a letter of S. Wohl, the VA rejected this claim based on plaintiff's outpatient medical records of October 15, 1982 through February 14, 1983, including the results of the tests performed by Dr. Derby, but did not mention Dr. Derby's diagnosis.

Plaintiff timely filed a Notice of Disagreement on April 5, 1984. Plaintiff was then sent to a psychiatrist, Dr. Abeles, and another neurologist, Dr. Barrett. Based on those examinations, in a letter dated October 16, 1984, Robert Schmidt, Adjudication Officer, notified plaintiff that his nervous condition would be increased to a 50 percent disability rating. Plaintiff disagreed with this determination and argued that he was entitled to a higher rating based on the aggregate of his medical conditions: hand tremors and neurological disorder. The Board of Veterans Appeals ("Board" or "BVA") disagreed. The Board affirmed the determination of the VA, finding that the tremors and the neurological disorder were part of a single disability, only entitling plaintiff to a 50 percent disability rating.

On June 7, 1991, plaintiff sought to file a second amended complaint in Sugrue I to name Robert Schmidt, an Assistant Adjudication Officer at the VA's New York Regional Office, S. Wohl [1], and certain uniden-

tified individuals as defendants (collectively "the individual defendants"). On that same day—June 7, 1991—plaintiff filed an identical complaint in Sugrue II against the VA and the individual defendants to prevent the expiration of the statute of limitations. Plaintiff now moves this Court for leave to file his proposed second amended complaint in Sugrue I.

The government opposes plaintiff's motion to amend the complaint in Sugrue I and cross-moves to dismiss both actions under Fed.R.Civ.P. 12(b)(1) and (b)(6) and, in the alternative, for summary judgment under Fed.R.Civ.P. 56 in both actions.[2] For the following reasons, plaintiff's motion to amend the complaint in Sugrue I is denied, and the government's motion to dismiss Sugrue I and Sugrue II for lack of subject matter jurisdiction is granted.

## DISCUSSION

Plaintiff asserts four grounds for relief against the VA in Sugrue I and against the VA and the individual defendants in Sugrue II, alleging that they violated (1) the Privacy Act ("PA"); (2) the Freedom of Information Act ("FOIA"); (3) the Due Process clause of the Fifth Amendment; and (4) the Takings Clause of the Fifth Amendment. However, since the plaintiff seeks, in essence, judicial review of his disability rating and of his benefits award, all four claims for relief must be dismissed for lack of subject matter jurisdiction.

All of plaintiff's claims stem from his contention that various internal procedures of the VA entitled him to a complete neurological examination by the Department of Medicine and Surgery of the VA which the BVA overlooked in denying him veterans' benefits.[3] Plaintiff's PA challenge is prem-

---

**1.** According to the government, S. Wohl died on December 27, 1985, six years prior to the commencement of Sugrue II.

**2.** The government also argues that the United States Attorney General was not served with the summons and complaint in Sugrue I. However, as plaintiff correctly points out, the Attorney General was timely served on October 9, 1990, as indicated on the return receipt card attached to the Summons.

**3.** The regulations promulgated by the VA provide for medical examinations of applicants for veterans' benefits. 38 C.F.R. § 3.326. In this case, plaintiff was examined by two neurologists: Dr. Derby on February 14, 1983 and by Dr. Barrett in 1984. However, plaintiff contends that he should have undergone a complete neurological examination.

ised on the fact that the BVA did not include the information which a neurological examination would have revealed. Pl's Memo. of Law in Opp'n to Def's Motions to Dismiss at 30 ("Memo. in Opp'n"). The FOIA claim likewise challenges his disability rating on the ground that the VA failed to promulgate a regulation that two claimed disabilities—namely, a neurological condition of essential tremors and a disability of anxiety disorder—would be considered part of a single disability. Memo. in Opp'n at 41. Plaintiff's Procedural Due Process claim is based on the Secretary's failure to afford him a complete neurological examination which potentially could increase his disability rating.[4] Memo in Opp'n at 46–47, 51–52. Because this Court is precluded from reviewing VA determinations of benefits awards or of disability ratings, this action must be dismissed for lack of subject matter jurisdiction. Fed. R.Civ.P. 12(b)(1).

Section 511 of Title 38 provides:

The Secretary [of Veterans Affairs] shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans.... Subject to [the exceptions listed in] subsection (b), *the decision of the Secretary as to any such question shall be final and conclusive and may not be re-viewed by any other official or by any court,* whether by an action in the nature of mandamus or otherwise.

38 U.S.C. § 511(a) (emphasis added).[5]

In *Johnson v. Robison,* 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974), the Court distinguished between a "review [ ] of those decisions of law or fact that arise in the *administration* by the [VA] of a *statute* providing benefits for veterans" and questions of law that "arise under the Constitution, not under the statute whose validity is [being] challenged." *Id.* at 367, 94 S.Ct. at 1165–66 (emphasis in original). The Court explained that "[a] decision of law or fact 'under' a statute is made by the [Secretary] in the interpretation or application of a particular provision of the statute to a particular set of facts." *Id.* It is such decision which is barred from judicial consideration under 38 U.S.C. § 511(a).

█ In *Johnson,* a conscientious objector to the military draft brought a class action challenging the denial of veterans' educational benefits to conscientious objectors, who had completed two years of alternative civilian service, as violative of the First and Fifth Amendments. *Id.* at 363–64, 94 S.Ct. at 1163–64. In upholding the constitutionality of statutes relied upon by the VA, the Court held that section 211 (now section 511) did not preclude judicial review of a

---

**4.** In addition, plaintiff argues that the reduction of benefits for his hand tremors that he received in 1954 constitutes a taking. Under 38 U.S.C. § 110, a disability rating which has been in effect for twenty years can only be reduced upon a showing of fraud. Plaintiff apparently believes that the Secretary reduced his disability rating for the hand tremors when he combined plaintiff's neurological condition with his hand tremors. However, the fallacy of this argument is readily apparent since plaintiff's 30% disability rating was increased to 50% based on his anxiety disorder, which already included the disability rating associated with plaintiff's hand tremors. Accordingly, plaintiff's disability rating for his hand tremors was never reduced.

**5.** None of the four exceptions enumerated in subsection (b) of section 511 is applicable to this case. Subsection (b) allows judicial review:

(1) by the Court of Appeals for the Federal Circuit of alleged violations of FOIA, 5 U.S.C. § 552(a)(1), (agency must publish its procedures in the Federal Register) and § 553 (agency must publish proposed rules in Feder-al Register) in accordance with 38 U.S.C. § 502. While plaintiff raises a FOIA claim under 5 U.S.C. § 522(a)(1), only the Federal Circuit may have jurisdiction over that challenge;

(2) of cases involving life insurance benefits under 38 U.S.C. §§ 1975, 1984;

(3) of cases involving housing and small business loans under Chapter 37 of Title 38, 38 U.S.C. §§ 3701–3751; and

(4) by the Court of Veterans Appeals under Chapter 72 of Title 38, but only in cases where a veteran filed with the BVA, on or after November 18, 1988, a notice of disagreement with the decision of the VA. Pub.L. No. 100–687, § 402, 102 Stat. 4113, 4122. In this case, plaintiff may not avail himself of that appellate procedure because he filed a notice of disagreement in 1984.

Thus, this Court does not have subject matter jurisdiction over this action under any of these four exceptions.

constitutional challenge to a decision of Congress to create a statutory class entitled to benefits that does not include conscientious objectors. *Id.* at 367, 94 S.Ct. at 1165–66. That section only bars judicial review of "the [Secretary's] interpretation or application of a particular provision of the statute to a particular set of facts." *Id.* Thus, under *Johnson,* district courts have jurisdiction over actions involving facial challenges to the constitutionality of veterans' benefits legislation—i.e., statutes or regulations—but lack jurisdiction to review the application of such legislation to the particular facts of an individual case. *See also Larrabee by Jones v. Derwinski,* 968 F.2d 1497, 1500 (2d Cir.1992) (distinguishing between facial and "as applied" challenges under *Johnson* ). That the district court lacks subject matter jurisdiction to entertain constitutional challenges which are essentially attacks upon awards of veterans' benefits, *see Pappanikoloaou v. Administrator of Veterans Admin.,* 762 F.2d 8, 9 (2d Cir.1985) (no subject matter jurisdiction over a due process challenge), *cert. denied,* 474 U.S. 851, 106 S.Ct. 150, 88 L.Ed.2d 124 (1985). Thus, plaintiff's challenges to his disability rating premised on the PA, the FOIA, and the Due Process and Takings Clauses are attempts to circumvent 38 U.S.C. § 511(a) by seeking relief on a constitutional claim arising out of a determination concerning veterans' benefits and are dismissed for lack of subject matter jurisdiction.

The plaintiff's reliance upon *Eastern Paralyzed Veterans Assn., Inc. v. Veterans' Admin.,* 762 F.Supp. 539 (S.D.N.Y. 1991) is misplaced and is clearly distinguishable. That was a class action on behalf of spinal cord injured patients at one VA medical center in which it was alleged that the members of the proposed class were denied rights and benefits provided other spinal cord injured patients at other VA medical centers, thereby depriving them of equal protection and due process. *Id.* at 540–41. In denying the defendants' motion to dismiss for lack of subject matter jurisdiction, the court drew the distinction identified in *Johnson v. Robison, supra.* The court emphasized that the plaintiff was

not challenging the medical treatment afforded any specific individual, and recognized the continued authority of *Pappanikoloaou* that:

> To the extent the complaint seeks damages for the VA's denial of due process in handling his claim, we agree with those circuits that have held that one may not circumvent [§ 511(a) ] by seeking damages on a constitutional claim arising out of a denial of benefits. (citations omitted).

*Eastern Paralyzed,* 762 F.Supp. at 542 (quoting *Pappanikoloaou,* 762 F.2d at 9). In this case, plaintiff seeks judicial review of his individual veterans' benefits determination which is clearly barred by section 511. Plaintiff also cites two lower court decisions which entertained procedural due process claims against the VA, *Beauchesne v. Nimmo,* 562 F.Supp. 250, 253–54 (D.Conn.1983); *Dumas v. Cleland,* 486 F.Supp. 149, 151–52 (D.Vt.1980); those cases, however, have been displaced by *Pappanikoloaou.* Accordingly, plaintiff's claims against the VA through defendant Secretary are dismissed for lack of subject matter jurisdiction.

### The Individual Defendants

In Sugrue II, plaintiff asserts a claim for relief against S. Wohl, Robert J. Schmidt and other unnamed defendants in their individual capacities (collectively "the individual defendants"), for "render[ing] effectively unavailable the [ ] due process rights [of the Fifth Amendment] and the procedural safeguards [of the PA and FOIA]." The individual defendants are named in this action solely for their alleged acts or omissions in denying plaintiff's application for an increased disability rating. Apparently, plaintiff seeks damages against those VA employees in their individual capacity under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), for an alleged due process violation. *Davis v. Passman,* 442 U.S. 228, 248–49, 99 S.Ct. 2264, 2278–79, 60 L.Ed.2d 846 (1979).

In light of *Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983) and *Schweiker v. Chilicky,* 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988), this Court concludes that a *Bivens* claim cannot lie against VA employees in setting the level of veterans' benefits. In *Bush,* the Court refused to recognize a *Bivens* claim in the federal employment context because "special factors counsel[ed] hesitation" to create a new remedy where Congress provided for adequate remedies for constitutional violations. 462 U.S. at 388–89, 103 S.Ct. at 2416–17. Likewise, in *Schweiker,* the Court refused to recognize a *Bivens* claim against federal employees who initially denied social security benefits to the plaintiffs. 487 U.S. at 417–18, 108 S.Ct. at 2464–65. The Court held that the broad remedial structure of that statute was a "special factor" counselling against creating a new remedy. *Id.* at 423, 108 S.Ct. at 2467–68.

Here, the lack of remedies afforded by Congress and the policies underlying the lack of judicial review dictates that individual VA employees be immune from a *Bivens* suit. Allowing a disgruntled veteran to sue VA employees who apply veterans legislation in the course of their duties would severely undermine Congress' intent in precluding judicial review of challenges to veterans' benefits legislation. As the Court noted in *Johnson v. Robison,* the dual purpose of non-reviewability of VA determinations is:

> (1) to insure that veterans' benefits claims will not burden the courts and the [VA] with expensive and time-consuming litigation, and (2) to insure that the technical and complex determinations and applications of [VA] policy connected with veterans' benefits decisions will be adequately and uniformly made.

415 U.S. 361, 370, 94 S.Ct. 1160, 1167, 39 L.Ed.2d 389 (1974).

It is clear that these purposes would be frustrated if VA employees could be sued in their individual capacity for making veterans' benefits determinations. Instead of flooding already overflowing court dockets with appeals of adverse VA determinations, veterans would commence actions against individual VA employees. In addition, by entertaining lawsuits against VA employees, district courts could affect the "complex" determinations of those employees in deciding to award or deny veterans' benefits for fear of personal liability. Consequently, it is clear that congressional inaction was not inadvertent, and plaintiff cannot recover damages against the individual defendants.[6]

*Motion to Amend*

Plaintiff moves to amend his complaint in Sugrue I to name the individual defendants who were named as defendants in Sugrue II. While the denial or grant of a motion to amend is within the discretion of the district court, *Evans v. Syracuse City Sch. Dist.,* 704 F.2d 44, 46 (2d Cir. 1983) (quoting *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)), "leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). In *Foman,* the Court stressed the importance of liberally granting leave to amend, unless the court finds "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] *futility of amendment.*" 371 U.S. at 182, 83 S.Ct. at 230 (emphasis supplied). Cognizant of the liberal amendment policy of the Federal Rules in general, plaintiff's motion to amend must still be denied because it is clear, based on the dismissal of those identical claims in Sugrue II, that the amendment would be futile.

For the foregoing reasons, plaintiff's motion to amend the complaint in Sugrue I is denied, and the government's motion to dismiss both Sugrue I and Sugrue II as against the VA and the individual defendants is granted.

SO ORDERED.

---

**6.** The individual defendants would also appear to have qualified immunity under *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).